Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 12 2013, 9:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**R. SCOTT LEWIS**
**DAVID A. LEWIS**
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**DAVID E. GRAY**
**MARK E. MILLER**
Bowers Harrison, LLP
Evansville, Indiana

**C. GREGORY FIFER**
Applegate & Fifer
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CITY OF JEFFERSONVILLE, INDIANA and CITY OF JEFFERSONVILLE SANITARY SEWER BOARD, | ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 10A01-1210-PL-485 |
| ENVIRONMENTAL MANAGEMENT CORPORATION, | ) ) ) ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10C04-0808-PL-757

**June 12, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Defendants, the City of Jeffersonville (Jeffersonville) and the City of Jeffersonville Sanitary Sewer Board (Sewer Board) (collectively, the City), appeal the trial court's award of attorney fees in favor of Appellee-Plaintiff, Environmental Management Corporation (EMC).

We reverse and remand with instructions.

## ISSUE

The City raises three issues for our review, which we consolidate and restate as the following single issue: Whether the trial court's award of attorney fees for the City's contempt of court was supported by the evidence.

## FACTS AND PROCEDURAL HISTORY

This matter involves the trial court's award of attorney fees after remand from a prior appeal. *See City of Jeffersonville v. Environmental Management Corp.*, 954 N.E.2d 1000 (Ind. Ct. App. 2011). On May 1, 2004, Jeffersonville through the Sewer Board entered into a contract (the Contract) with EMC for the operation and maintenance of Jeffersonville's sewer system. EMC was obligated to operate and maintain the sewer system in accord with state, federal and other requirements. The Contract contained a notice and cure provision giving both parties the right to terminate "in the event of a material breach or unsatisfactory performance of a material obligation" upon 90 days' prior notice. *Id*. at 1004.

2

On April 15, 2008, the Sewer Board held a public meeting where Mayor Thomas Galligan of Jeffersonville (Mayor Galligan) discussed his concerns with EMC's performance. Although not recorded in the meeting minutes, the Sewer Board instructed its attorney to first send written notice to EMC regarding its deficient operation and maintenance of the sewer treatment system and then to send a notice terminating the Contract if "EMC had not corrected the issues within 90 days." *Id*. at 1005. On April 18, 2008, the attorney sent EMC a letter requesting detailed operational documentation, inspection or investigation results, and records "including lists of equipment and equipment maintenance, a history of work performed, and customer complaints." *Id*. However, the letter did not indicate that the City intended to terminate the Contract if the performance issues were not corrected within 90 days. EMC later informed Jeffersonville that the Sewer Board's April 18 letter "requested documentation that exceeded EMC's production obligations under the Contract." *Id*. In its August 7, 2008 letter, the City notified EMC that they were terminating the Contract because EMC had failed to provide records requested by the City's April 18 letter and had failed to correct the operational deficiencies previously identified at the April 15 meeting. EMC later responded that the City still had not provided EMC with written notice of a specific material breach or unsatisfactory performance as contractually required prior to termination.

On August 18, 2008, EMC filed its complaint for declaratory judgment, breach of contract, and specific performance, as well as a motion for preliminary injunction and

3

expedited hearing. On August 22, 2008, the trial court approved the parties' agreed entry and order (Agreed Entry) vacating and resetting the preliminary injunction hearing. Under the Agreed Entry, the parties agreed to maintain the *status quo* until a ruling on EMC's preliminary injunction motion, and that the City would neither interfere with EMC's access to the sewer facilities, nor hire EMC employees pending the ruling on the preliminary injunction. On September 12, 2008, the matter was referred to mediation. On September 23, 2008, the City filed its answer, a counterclaim against EMC, and its response to EMC's preliminary injunction request. The City's counterclaim included fraudulent inducement and damages resulting from EMC's acts or omissions. On October 17, 2008, in a separate cause of action, EMC filed a complaint against the City, alleging a violation of Indiana's Open Door Law. On October 23, 2008, EMC filed its motion to dismiss the City's counterclaim in the breach of contract action, which was later denied.

On December 1, 2008, Mayor Galligan, accompanied by two police officers, arrived at the sewer plant "and took over its operations, declaring that EMC could no longer have access to the [p]lant or the treatment system." *Id*. at 1007. That same day, EMC filed "a verified information for contempt, a motion to enjoin further violation of the Agreed Entry, and a motion for an emergency hearing thereon against the City." *Id*. On December 3, 2008, the City filed its verified response to EMC's contempt motion. In addition to denying that it violated the Agreed Entry, the City made a counter-motion for contempt against EMC, alleging that EMC had violated alternative dispute resolution

4

rules by filing a notice of tort claim and a second Open Door Law complaint against the City subsequent to the Agreed Entry.

Thereafter, both parties moved for summary judgment, which the trial court denied on February 24, 2009. The trial court also consolidated EMC's four claims – two Open Door claims, breach of contract, and the City's contempt – as well as the City's counterclaim for trial. A lengthy bench trial ensued, stretching over three separate trial periods in June, July and December 2009. On April 12, 2010, the trial court entered judgment in favor of EMC on all four of its claims and the City's counterclaim, awarded damages to EMC, and ordered the City to pay EMC's attorney fees and costs. In addition to post-judgment interest, the trial court awarded EMC its lost profits of $268,560.39 from operation of the sewer plant and attorney fees and costs in the amount of $315,554.04.

The City appealed raising six issues of alleged trial court error including EMC's breach of contract, Open Door Law, and contempt claims as well as the trial court's award of attorney fees and costs. *Id*. at 1003. We affirmed in part, reversed in part and remanded. *Id*. at 1016-17. Regarding the breach of contract issue, we found that the City's "April 18 letter did not provide EMC with written notice that the City intended to terminate the Contract," and did not "allege inadequate performance." *Id*. at 1008-9. This court therefore concluded that "the trial court did not err in concluding that the City breached its contract with EMC." *Id*. at 1009. Regarding the Open Door Law Claims, we concluded that EMC waived its claims by failing to timely file them. *Id*. at 1011.

5

Regarding the contempt action, we rejected the City's argument "that it did not violate the Agreed Entry because EMC violated it first." *Id*. at 1012. Because "the City has not disputed that it violated the Agreed Entry," we held that "the trial court did not abuse its discretion in finding the City in contempt of the Agreed Entry." *Id*.

We next reviewed the trial court's award of $315,554.04 in attorney fees and costs to EMC. The City argued that this award was an abuse of discretion because it was awarded "without regard to whether the [attorney] fees were incurred in relation to the Open Door Complaints, the contempt of the Agreed Entry, or the breach of contract Complaint." *Id*. We concluded that the trial court had abused its discretion and remanded "to the trial court with instructions that the trial court modify its award of [attorney] fees and costs to EMC to include only the amount of [attorney] fees EMC incurred as a result of its contempt complaint and costs reflecting EMC's losses for filing fees and statutory witness fees." *Id*. at 1017.

On July 26, 2012, the trial court held a hearing on attorney fees. EMC introduced affidavits and time sheets from five of its attorneys at the law firms of Applegate Fifer Pulliam LLC (Applegate) and Bowers Harrison LLP (Bowers). Two of the attorneys' affidavits contained the following statements:

> 3. In order for EMC to prove that the City's actions on December 1, 2008 violated the Agreed Order, EMC had to prove at trial that the City had violated the terms of the Agreed Order, and that the City had no contractual authority to physically remove EMC without prior notice from the City's [wastewater] treatment and collection facilities.
>
> 4. Due to the City's defenses to EMC's claim that the City violated the Agreed Order, EMC had to prove at trial that the City had no

contractual authority to physically remove EMC without prior notice from the City's wastewater treatment and collection facilities in order for EMC to prove that the City's action on the [sic] December 1, 2008 violated the Agreed Order.

5. Due to the City's defenses to EMC's claim that the City violated the Agreed Order, EMC had to prove at trial that the City had no contractual authority to take its actions on December 1, 2008, and that EMC had been damaged by the City's violation of the Agreed Order.

(Appellant's App. pp. 18-19, 67-68). Affidavits from EMC's three other attorneys contained substantially similar allegations. As a result, each attorney requested fees that admittedly pertained to both EMC's contempt and breach of contract claims.

On September 26, 2012, the trial court issued its Findings of Fact, Conclusions of Law, and Judgment awarding EMC's attorney fees. The trial court found that EMC filed "its Complaint for Declaratory Judgment, Breach of Contract, and Specific Performance and its Plaintiff's Motion for Preliminary Injunction and Expedited Hearing;" that the parties' Agreed Entry required maintenance of the *status quo*; and that EMC requested that the City be found in contempt of the Agreed Order. (Appellant's App. p. 10). However, the trial court found that "[t]he City's actions made it necessary for EMC to prove that it had the right to operate the facilities, that the City lacked the authority to interfere with EMC's rights, and that EMC was damaged." (Appellant's App. p. 11). The trial court also found that the Contract terminated on April 30, 2010 and "but for the City's violation of the Agreed Order, EMC's right to operate the facilities would have remained unimpaired through the contract termination date." (Appellant's App. p. 11). The trial court further concluded that to prove the City's contempt, EMC had to not only

7

prove the City's violation of the Agreed Order but because the City asserted its contractual authority as a defense to the contempt claim, EMC "had to prove that the City had no contractual authority to physically remove EMC without prior notice from the City's wastewater treatment and collection facilities." (Appellant's App. p. 16). The trial court also concluded that "[s]olely due to the contemptuous acts of the Defendants, EMC was required to provide its lost profit damages at the trial of this case." (Appellant's App. p. 16).

The trial court calculated attorney fees from December 1, 2008 to February 23, 2010 as "$170,754.54 to the firm of [Bowers], and [attorney] fees of $76,195.50 to the firm of [Applegate] […], for a total of $246,950.04." (Appellant's App. p. 13). The trial court then deducted fees in the amount of $19,644.91 for EMC's Open Door Law claims during the same period. It awarded EMC attorney fees of $227,305.13, to which it added post-judgment interest of eight percent, resulting in a total award of $269,004.47.

The City now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

The City challenges the trial court's award of attorney fees upon remand, arguing that the trial court awarded attorney fees for legal services unrelated to the contempt claim. Because the trial court entered special findings of fact and law, we apply a two-tiered standard of review on appeal. *City of Jeffersonville*, 954 N.E.2d at 1007. First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id*. We will set aside the trial court's findings and conclusions

8

only if they are clearly erroneous and a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Moreover, in reviewing a trial court's findings, we neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* We must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Id.*

Further, we review an award of attorney fees keeping in mind that a trial court is afforded broad discretion in awarding attorney fees and expenses. *See id.* at 1012. In light of that standard, we will only reverse a trial court's decision when an abuse of discretion is apparent. *Id.* at 1013. A trial court has abused its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In addition, the amount of the trial court's award of attorney fees must be supported by the evidence. *Id.*

The trial court's findings included the following: (1) that the fees awarded to EMC did not include "compensation for fees incurred by EMC as a result of EMC's breach of contract claim;" (2) that attorney fees awarded "do not include compensation for fees incurred by EMC as a result of EMC's pursuit of its Open Door Law claims;" and (3) that attorney fees awarded "include only compensation for fees incurred by EMC in relation to its contempt [claim]." (Appellant's App. pp. 14-15). As noted, each of the five EMC attorneys submitted affidavits stating that their requested attorney fees included fees for EMC's breach of contract and contempt claims.

9

The imposition of sanctions to compensate the other party for injuries incurred as a result of the contempt is within the discretion of the trial court. *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d at 198, 204 (Ind. 2012). In determining an amount of damages the trial court may take into account the inconvenience and frustration suffered by the aggrieved party. *Id*. However, an award of attorney fees is appropriately limited to those fees incurred because of the basis underlying the award. *Nance v. Miami Sand & Gravel LLC*, 825 N.E.2d 826, 838 (Ind. Ct. App. 2005), *trans. denied*. The party requesting an assessment of attorney fees bears the burden of proving an appropriate allocation of fees between issues for which attorney fees may be assessed and those for which they may not. *Id*. Our determination in *City of Jeffersonville* required the trial court on remand to "modify its award of [attorney] fees and costs to EMC to include *only* the amount of [attorney] fees EMC incurred as a result of its contempt complaint and costs reflecting EMC's losses for filing fees and statutory witness fees." *City of Jeffersonville*, 954 N.E.2d at 1017 (emphasis added). The trial court's award of attorney fees did not do so and we therefore reverse the trial court.

To justify the inclusion of attorney fees in addition to those incurred with the contempt claim, EMC argues that the contempt and the breach of contract claims were intertwined. The trial court accepted this argument and concluded that to prove the City's contempt, EMC was required "to prove that the City lacked contractual authority or legal basis to remove EMC without prior notice" from the sewer plant. (Appellant's App. p. 16). It further concluded that "[b]ut for the City's contemptuous acts," "EMC

10

would have remained in possession of the treatment plant and had the opportunity to perform the contract" and would not have been "required to provide its lost profit damages at trial." (Appellant's App. p. 16).

Although the attorney fees were incurred in preparation for and during the consolidated trial of the Open Door Law, breach of contract, and contempt claims, we are not persuaded that the trial court correctly concluded that the trial of the breach of contract claim was substantially a result of Mayor Galligan's contemptuous conduct. As shown by the trial court's findings of fact and conclusions of law, evidence pertaining to the contempt claim was distinguishable from evidence on the breach of contract claim. To say that one caused the other is simply not reflected in the evidence and contrary to our decision in the prior appeal.

The contempt claim involved proof of the City's willful violation of the Agreed Entry. An order of the court is only unenforceable when the court lacked jurisdiction. *Witt*, 964 N.E.2d at 203. If, in the valid exercise of its jurisdiction, a court issues an erroneous order, that order must be obeyed. *Id*. The only remedy from an erroneous order is appeal and disobedience thereto is contempt. *Id*. Further, to prove a party's contempt of court, evidence establishing a party's willful disobedience of a clear and certain court order is required. *See id*. at 202. It is undisputed that the City did not challenge the trial court's jurisdiction with respect to the Agreed Order. Instead, the City's arguments in defense of its contemptuous behavior were that (1) EMC violated the agreed entry first; and (2) that it had a contractual right to violate the Agreed Entry.

However, the trial court found and we recognized in the prior appeal that such arguments were "untenable." (Appellee's App. p. 61). Further, the parties stipulated that Mayor Galligan took over the sewer plant on December 1, 2008, instructed an EMC employee to leave the premises, and then hired EMC employees to work at the plant. "When a person fails to abide by a court's order, that person bears the burden of showing that the violation was not willful." *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999), *trans. denied.* The City did not do so and was properly found in contempt.

The breach of contract claim involved the City's failure to comply with its notice and cure obligations prior to terminating the Contract. Findings of fact and conclusions of law contained in the trial court's April 12, 2010 Judgment illustrate how the breach of contract claim was distinguishable from the contempt claim. Of the 86 findings of fact, six findings directly bore on the City's contemptuous behavior on December 1, 2008 and the remaining findings pertain to whether EMC performed its obligations regarding staffing, reporting, and performance under the Contract. Of the 22 conclusions of law, five addressed the City's contemptuous conduct and the remaining conclusions pertained to whether the City complied with the notice and cure provisions in the Contract so as to permit them to terminate the Contract.

Thus, the trial court abused its discretion by not specifically apportioning the attorney fees so as to impose fees only for the contempt claim. Although the trial court excluded attorney fees incurred either as a result of the unsuccessful Open Door Law claims or after trial had concluded, it again awarded "blanket compensation" to include

fees incurred in the breach of contract claim. *City of Jeffersonville*, 954 N.E.2d at 1013. We therefore reverse the trial court's award of attorney fees to EMC, and remand for a determination as to the amount of attorney fees incurred *solely* for the prosecution of the contempt claim.

## CONCLUSION

Based on the foregoing, we conclude that the trial court's award of attorney fees for the City's contempt was unsupported by the evidence. We therefore remand to the trial court with instructions to calculate the amount of attorney fees incurred in the prosecution of EMC's contempt complaint.

Reversed and remanded with instructions.

BRADFORD, J. and BROWN, J. concur